*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re WATSON/BRISBOIS, Minors.

UNPUBLISHED
October 12, 2023

No. 365396
St. Clair Circuit Court
Family Division
LC No. 21-000196-NA

Before: MURRAY, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to KMW, KW, KAW, and EB, pursuant to MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood of harm if returned to parent's home). We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

On November 4, 2021, the Department of Health and Human Services (DHHS) petitioned the trial court to temporarily remove the children from respondent's care due to her ongoing substance abuse, untreated mental health issues, housing instability, exposure of the children to substance abuse, and refusal to comply with safety plans. The petition alleged that respondent improperly supervised the children and placed them at risk of harm because she admittedly abused drugs while caring for them, left drug paraphernalia in areas of the house accessible to the children, and allowed two male roommates, including Thomas Labadie, to overdose in the home while the children were present. The petition also alleged that respondent physically neglected the children by failing to provide them with a suitable living environment. The DHHS stated that respondent and the children were evicted from their home because respondent let Labadie, a known sex offender, reside with them despite being warned that a sex offender was not allowed to live in the apartment complex. The petition further stated that respondent fled with EB, and refused to disclose EB's location to Children's Protective Services (CPS). The petition also alleged that while respondent was hiding with EB, a domestic violence incident occurred where Labadie punched respondent in the face in front of EB then forced respondent and EB out of the car and left them stranded.

Based on these allegations, the trial court removed the children and authorized the petition. At the adjudication hearing on November 18, 2021, respondent admitted to the allegations in the petition, and the trial court assumed jurisdiction over the children. The parent-agency treatment plan (PATP) required respondent to maintain weekly contact with the service worker, comply with court orders, obtain and maintain a legal source of income and suitable housing, refrain from alcohol and drug use, submit to drug screens, comply with psychological and psychiatric assessments and submit to recommendations therefrom, complete a substance abuse assessment and follow the recommendations, and successfully complete parenting courses.

Despite the DHHS's efforts, respondent failed to participate in the services offered to her, which ultimately led the DHHS to file a supplemental petition on November 15, 2022. In that petition, the DHHS requested that the trial court terminate respondent's parental rights because she failed to comply with the court-ordered services or rectify any of the issues that led to the adjudication.

At the termination hearing on February 1, 2023, Jacquelyn Oliver, an adoption and foster care specialist, testified that, during the 15 months since the children were removed, other than maintaining regular contact with the DHHS, respondent failed to comply with the requirements of her PATP and refused the services she was offered. Oliver testified that respondent failed to improve her substance abuse issues, attend substance abuse therapy, or submit to a majority of her required drug screens. Oliver stated that of the eight drug screens respondent submitted between March 2022 and October 2022, she tested negative twice and tested positive six times. Oliver reported that respondent's drug screens were positive for methamphetamine, amphetamine, tetrahydrocannabinol (THC), and cocaine. Oliver further testified that since November 7, 2022, respondent was scheduled for 18 drugs screens; respondent only submitted two of those, one of which tested positive for methamphetamine, amphetamine, and THC, and the other of which tested negative. In addition to the positive drug screens, Oliver stated that on July 4, 2022, emergency medical personnel had to revive respondent after she overdosed on methamphetamine and heroin.

Oliver further testified that respondent failed to obtain a legal source of income sufficient to support herself and the children throughout the duration of this case. Oliver stated that the first time respondent showed proof of employment was on January 18, 2023, when she provided paystubs from a farm where she worked and lived from October 2022 until December 2022, earning $350 per month. Oliver testified that she made reasonable efforts to assist respondent in obtaining employment, but opined that respondent did not seem to want a job.

In regard to housing, Oliver testified that respondent was homeless during most of 2022. Oliver also testified that when the DHHS attempted to assist respondent with finding suitable housing, respondent rejected the assistance. Oliver stated that respondent lived with Eugene Visga and his mother near the beginning of 2022, but Visga was arrested around that time for assaulting his mother, after which respondent became homeless. Oliver testified that after the supplemental petition was filed, respondent moved in again with Visga following his release from jail. Oliver testified that respondent married Visga on January 4, 2023, despite knowing that CPS prohibited Visga from being around the children due to his extensive criminal history. Oliver explained that, for these reasons, even though the house respondent and Visga were allegedly living in at the time of the termination hearing was structurally suitable, the house was unsuitable for the children due to Visga's presence.

With respect to respondent addressing her mental health issues, Oliver testified that although respondent completed her psychological examination and substance abuse assessment, she did not comply with the subsequent recommendations from either, such as mental health therapy, substance abuse therapy, and entering a rehabilitation center. Oliver also explained that respondent was ordered to successfully complete in-home life skills and parenting classes to address her substance abuse, mental health, parenting skills, and home-management skills, but respondent did not comply with these requirements. Oliver explained that respondent was terminated from the parenting classes because she refused to participate and claimed to be too busy.

Regarding visitation, Oliver testified that respondent regularly attended vists with her children, only missing seven. However, Oliver stated that though instructed not to, respondent sometimes engaged in inappropriate conversations and other times she yelled at the children. Oliver added that although respondent was advised to, she never brought snacks or activities for the children. Oliver stated that respondent appeared to attend one visit with the children while under the influence of drugs. Oliver opined that respondent did not appear to learn any new parenting skills or implement Oliver's parenting advice. Oliver also reported that the visits with respondent had negative impacts on KAW and EB; both would become emotional after the visits, and engage in tantrums or cry because they missed respondent. Oliver testified that respondent never progressed to unsupervised visits because she failed to progress in her PATP, continued to test positive for drugs, and sometimes behaved inappropriately during visits. Finally, Oliver testified that EB was doing well in her placement with her father, and KMW, KW, and KAW were doing well in their placement with their maternal grandmother, Vicklynn Parker.

Following the termination hearing, the trial court adopted the referee's recommended findings of fact and conclusions of law and entered an order terminating respondent's parental rights under MCL 712A.19b(3)(c)(*i*) because respondent failed to meaningfully address the issues of substance abuse, housing instability, and improper supervision of the children that resulted in them being exposed to dangerous individuals. The trial court terminated respondent's parental rights under MCL 712A.19b(3)(g) because respondent continued to associate with inappropriate individuals, failed to obtain suitable housing, continually prioritized her drug addiction over her children, failed to care for her children's emotional needs, failed to maintain steady employment, and refused to participate in services designed to help her progress toward reunification. The trial court also terminated respondent's parental rights under MCL 712A.19b(3)(j), finding that respondent's untreated substance abuse and mental health issues impacted her ability to have a stable living environment and to discern healthy and appropriate relationships, which put the children at risk of harm. The trial court concluded it was in the children's best interests to terminate respondent's parental rights despite their relative placements and bond with respondent because the children needed permanence, stability, and finality, and because respondent refused to comply with her PATP or demonstrate that she possessed adequate parenting skills.

This appeal followed.

## II. STATUTORY GROUNDS

On appeal, respondent first argues that termination of her parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j) was premature because she was beginning to make progress on her case service plan and should have been given more time to rectify the issues. We disagree.

"We review the trial court's determination of statutory grounds for clear error." *In re Sanborn*, 337 Mich App 252, 272; 976 NW2d 44 (2021). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id*. at 272-273 (quotation marks and citation omitted).

Under MCL 712A.19b(3)(c)(*i*), a trial court may terminate parental rights if it finds by clear and convincing evidence that "182 or more days have elapsed since the issuance of an initial dispositional order" and "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." In this case, the trial court entered an initial dispositional order taking jurisdiction over the children on November 18, 2021, and the termination hearing occurred on February 1, 2023. Therefore, more than 182 days had elapsed since the issuance of an initial dispositional order as required by MCL 712A.19b(3)(c).

Respondent was given 15 months to correct the issues which led to her children's removal before her parental rights were terminated. The trial court removed the children from respondent because of respondent's substance abuse, housing instability, untreated mental health issues, improper supervision of the children (including exposure of the children to domestic violence and substance abuse), and refusal to comply with safety plans. By February 2023, respondent had failed to rectify any of the issues which led to the children's removal.

In regard to respondent's substance abuse, throughout the case, respondent continually tested positive for methamphetamine, amphetamine, THC, and cocaine. Just over two months prior to trial, respondent still tested positive for methamphetamine. On July 4, 2022, respondent overdosed on methamphetamine and heroin. In addition, respondent failed to appear for the majority of her court-ordered drug screens. Respondent also did not complete the substance abuse classes she was ordered to participate in. Although respondent completed a substance abuse assessment, she did not follow any of the resulting recommendations. Respondent began a rehabilitation program, but did not complete it. Though respondent went to North Carolina to "get sober," she admitted to using illicit drugs while in North Carolina. Respondent even attended a visit with her children while apparently under the influence of drugs. Oliver opined that respondent parenting the children, without receiving substance abuse treatment, would be harmful to the children's well-being. Accordingly, it is clear respondent's drug abuse remained a significant issue throughout the case.

Likewise, housing continued to be an issue for respondent at the time of the termination hearing. Respondent never obtained suitable housing throughout the pendency of the case. Respondent was homeless for much of the time the children were removed, and when she did have housing, it was not suitable for the children. Respondent was offered many housing resources but rejected the assistance. Part of respondent's difficulty in obtaining housing was her history of

-4-

failing to pay rent. Respondent was living in a nice house at the time of the termination hearing, but she provided no paperwork evidencing she was legally residing in that house and had a right to be there. Further, respondent was living with Visga, who was not approved to be around the children, making respondent's housing with Visga unsuitable for the children. Thus, it is evident respondent failed to obtain suitable housing.

Respondent also failed to adequately address her struggles with her mental health at the time of the termination hearing. Respondent was diagnosed with hostility, depression, anxiety, and erratic behavior, along with polysubstance use. Respondent completed her psychological examination but did not comply with the subsequent recommendations therefrom. Respondent did not complete any form of treatment. Oliver opined that it would be harmful to the children to allow respondent to parent them without participating in mental health treatment. Accordingly, respondent failed to address and treat her mental health issues as well.

Turning to respondent's improper supervision of the children, that too remained a barrier to reunification at the time of the termination hearing. Respondent chose to marry Visga, though she knew he was not allowed to be around the children because of his criminal history and drug abuse. Respondent also continued to abuse substances, and as stated previously, Oliver opined that respondent parenting the children, without receiving substance abuse treatment, would be harmful to the children's well-being. Respondent also refused to complete in-home life skills or parenting classes to improve her parenting skills. Oliver opined that respondent's visitations with the children also demonstrated that her parenting skills did not improve. Thus, respondent showed an overall failure to cooperate with any recommendations or court-ordered services to improve the issue of improper supervision that led to the children's removal.

Oliver opined that respondent failed to demonstrate any substantial benefit from the services she participated in, and failed to demonstrate a substantial change in any aspect of her life after the children were removed. The trial court concluded that, given the length of time that the children had been in care, and the fact that respondent had not benefited from participation in any services and had therefore made no progress towards reunification, there was no reasonable likelihood that the conditions that led to adjudication would be rectified in a reasonable amount of time considering the children's ages. In light of respondent's failure to accomplish any meaningful progress in improving the conditions that led to the children's removal by the time of the termination trial, we find that the trial court's conclusion in this regard was not clearly erroneous. Accordingly, based on our review of the record, we are not definitely and firmly convinced that the trial court erred when it found by clear and convincing evidence that termination was appropriate under MCL 712A.19b(3)(c)(*i*).[1]

---

[1] "Because one statutory ground for termination was established by clear and convincing evidence, we need not consider whether the other grounds cited by the trial court also supported the termination decision." *In re Foster*, 285 Mich App 630, 633; 776 NW2d 415 (2009).

### III. BEST INTERESTS

Respondent also contends the trial court clearly erred when it found that termination was in the children's best interests because the children were bonded with her, and terminating her parental rights would be detrimental to the children. We disagree.

This Court reviews for clear error a trial court's decision that termination is in a child's best interests. *In re Jackisch/Stamm-Jackisch*, 340 Mich App 326, 333; 985 NW2d 912 (2022). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id*.

"Once a statutory basis for termination has been shown by clear and convincing evidence, the court must determine whether termination is in the child's best interests." *In re LaFrance*, 306 Mich App 713, 732-733; 858 NW2d 143 (2014), citing MCL 712A.19b(5). Whether termination is in the children's best interest must be established by a preponderance of the evidence. *Id*. at 733. The trial court should consider all of the evidence when determining whether it is in the child's best interests to terminate parental rights. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). The trial court should consider "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id*., quoting *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (quotation marks omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*. at 714. "A parent's substance-abuse history is also relevant to whether termination is in the child's best interests." *In re Rippy*, 330 Mich App 350, 361; 948 NW2d 131 (2019). Additionally, "the fact that the children are in the care of a relative at the time of the termination hearing is an explicit factor to consider in determining whether termination was in the children's best interests." *In re Olive/Metts Minors*, 297 Mich App at 43 (quotation marks and citation omitted).

We conclude that the trial court did not clearly err when it found by a preponderance of the evidence that termination of respondent's parental rights was in the best interests of KMW, KW, KAW, and EB. The trial court found that termination was in the children's best interests, despite the bond each child had with respondent. This finding was not clearly erroneous because KMW, KW, and EB all voiced an acceptance of not being returned to live with respondent. The trial court also noted that KAW and EB had behavioral issues after visits with respondent, likely caused by the uncertainty of their situation. The trial court found that termination would provide the permanence, stability, and finality necessary to allow the children to process their emotions and begin to move forward.

The trial court similarly found that termination was in the children's best interests despite the children being placed with relatives due to the children's need of stability and permanency. A child's placement with a relative weighs against termination of parental rights. *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010). However, the trial court's finding was not clearly erroneous because even though KMW, KW, and KAW were placed with Parker, guardianship with Parker was not an appropriate alternative to termination based on the children's need for

permanence, Parker's unwillingness to comply with the process necessary to create a guardianship, and Parker's denial of respondent's substance abuse issues. Further, as noted by the trial court, there was no reason to believe that respondent would follow a guardianship placement plan given her lack of participation in the PATP. In addition, KMW and KAW have special needs that require consistent care by Parker, and respondent's lack of dedication to her own services was an indication of her inability to consistently make and keep required appointments. Also, while EB was placed with her father, the trial court did not clearly err in finding termination was in her best interests to prevent a disruption to her emotional well-being that would occur if respondent attempted to gain custody.

Further, in making its decision regarding the children's best interests, the trial court considered respondent's parenting ability and determined that respondent's lack of compliance with her service plan demonstrated her inability to safely and appropriately parent the children. The trial court's finding in this regard was not clearly erroneous because, as discussed above, respondent failed to make any progress toward rectifying the issues which led to the children being removed. See *White*, 303 Mich App at 713 (holding a respondent's failure to comply with her treatment plan suggests that it would be in the children's best interests to terminate the respondent's parental rights). Respondent's continued drug use strongly supported the trial court's finding that it was in the children's best interests to terminate respondent's parental rights. Further, respondent showed poor parenting skills by exposing her children to dangerous individuals, drug overdosing, and drug paraphernalia. Respondent even fled with EB, which resulted in EB being exposed to domestic violence and being stranded with no possessions. Respondent's decision to flee with EB showed poor parenting and put EB in harm's way. Oliver opined that it was in the best interests of all of the children to terminate respondent's parental rights because each child needed permanency, stability, and finality. Further, all of the children were doing well in their relative placements, and Parker was willing to adopt KMW, KW, and KAW. See *id.* at 714 (holding that the possibility of adoption is a factor to consider in a best-interests analysis). Accordingly, we conclude that the trial court did not clearly err by finding that termination of respondent's parental rights was in the children's best interests.

Affirmed.


/s/ Christopher M. Murray
/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle